UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| SAMANTHA MESSENGER, ) | |
|     PLAINTIFF ) | |
| ) | |
| V ) | |
| ) | |
| DENIS REICHARD MCDONOUGH, SECRETARY ) | |
| U.S. DEPARTMENT OF VETERANS AFFAIRS, ) | |
|     DEFENDANT ) | |
| _____) | |

COMPLAINT
AND
JURY DEMAND

COMES NOW Plaintiff, by and through counsel, Smith O'Toole & Brooke, and in support of her cause of action states:

SUMMARY OF CASE

1. This is a discrimination, sexual harassment and invasion of privacy claim brought pursuant to Title VII of the civil Rights Act of 1964 as amended, Section 701 et seq., 42 USC 2000e et seq. ("Title VII") Federal sector equal employment opportunities are set out in 29 C.F.R. Part 1614.

2. Plaintiff, Samantha Messenger, ("Ms. Messenger"), endured relentless attacks against her career and person at the hands of out-of-control employees including:

    - Removal and denial of a promotion she was already awarded because of her race;

    - Being falsely accused of having sexual relations with management to advance her career;

- Being verbally attacked, followed, and pursued outside of work by these same out of control employees; and

- Being humiliated by having her confidential medical records accessed by several of these out-of-control employees and having the information in those records used against her in their campaign of terror against Ms. Messenger.

Management for the Department of Veterans Affairs did nothing useful to resolve these issues and left Ms. Messenger to fend for herself against a relentless attack from fellow employees that had the backing and assistance of the American Federation of Government Employees local district, ("Union").

## JURISDICTION AND PARTIES

3. Ms. Messenger is a current employee of the Department of Veterans Affairs and resident of Georgetown, Scott County, Kentucky.

4. Denis McDonough is he recently appointed and confirmed Secretary of the Department of Veterans Affairs and the rightful named party to this cause of action.

5. This court has jurisdiction pursuant to 42 USC 2000e-5 and 28 USC 1331, 1343(4).

6. The events giving rise to this cause of action occurred in the Eastern District of Kentucky.

## BACKGROUND FACTS – KEY PEOPLE

7. Natasha Alexander is an African American woman and Health Benefits Advisor that was working on April 23, 2019 and is one of the primary culprits of harassing Ms. Messenger.

8. Valerie Scott is an African American woman and Human Resources Supervisor that retracted the hiring of Ms. Messenger and caused her to lose that position.

9. Kristina Curry is a white female and Chief AC&P and is accused of showing Ms. Messenger preferential treatment in exchange for sexual favors.

10. Tessa Lewis is an African American female and is an Advance Medical Support Assistant at the Lexington VA Medical Center.  Ms. Lewis is one of the primary harassers of Ms. Messenger having accused her of getting special treatment because she "slept with the boss" and worked diligently to make sure that Ms. Messenger did not get the job because she was a cute white lesbian.

11. Kevin Laitila is a white male and a Health Benefits Advisor in HAS and was the person that initiated contact with Ms. Messenger to see if she would like to interview for the HAS Secretary position under the VECS list.  Mr. Laitila affirmed that Ms. Scott imposed procedures upon the hiring for the position for which there was no standard operating procedure and that in his experience with other locations in the VA that the procedure he used that resulted in the hiring of Ms. Messenger was proper.

12. Tom Sloan is a white male and was selected to be a panel member for the initial interview of Ms. Messenger on April 23, 2019.  He was accosted by Ms. Alexander and is a key witness to the outrageous behavior and attacks upon Ms. Messenger.

## BACKGROUND FACTS – INTERVIEW INCIDENT

13. Ms. Messenger is a Caucasian lesbian woman that was employed as an Advanced Medical Support Assistant, Specialty Care and Whole Health facilitator at the Lexington VA medical Center in Lexington, Kentucky.

14. Just before April 23, 2019 Ms. Messenger was asked to interview for a job for the Health Administration Secretary position ("HAS Position") with the Department.

15. The HAS Position represented a promotion for Ms. Messenger.

16. Ms. Messenger's performance as an employee was exemplary prior to applying for the HAS Position.

17. Ms. Messenger was very active and involved with the Department and participated in various committees and roles.

18. On April 23, 2019 Ms. Messenger showed early up for her interview for the HAS Position.

19. While in the waiting room Ms. Messenger had a conversation with Tom Sloan, who arrived in the waiting room shortly after her.

20. Unbeknown to Ms. Messenger, Tom Sloan was a member of the panel that was supposed to interview her.

21. Shaivon Tennant was working the front desk when Ms. Messenger arrived for the interview.

22. Ms. Tennant saw that Mr. Sloan and Ms. Messenger had a conversation while in the waiting room together.

23. Ms. Tennant informed certain panel members that Ms. Messenger and Mr. Sloan were having a conversation, and this was inappropriate.

24. When it was time for Ms. Messenger to be interviewed, Ms. Alexander accosted Ms. Messenger and shouting and making a very loud scene.

25. Ms. Alexander shouted and screamed about Ms. Messenger only getting the opportunity because she was a "pretty little white girl".

26. Ms. Alexander shouted and screamed about "only white people" getting promoted in the Department.

27. Ms. Alexander shouted and screamed about Mr. Sloan and Ms. Messenger having a "personal relationship".

28. Ms. Alexander was extremely disrespectful to Ms. Messenger because she is white.

29. Ms. Alexander was outrageous with erratic and intimidating gestures toward Ms. Messenger with the specific intent of preventing Ms. Messenger from getting the promotion she was interviewing for because Ms. Messenger is white.

30. Ms. Alexander was so out of control that she interrupted the entire interview process and delayed everything for over an hour.

31. Ms. Alexander further stated that she was not going to let this interview happen.

32. Despite Ms. Alexander's best efforts, the interview with Ms. Messenger proceeded with a substitute panel member for Mr. Sloan.

33. On April 30, 2019, Ms. Messenger was informed that she received the job by Kristie Abney-Robinson by email.

34. The selecting official, Carol Stevens, confirmed that she selected Ms. Messenger for the position.

35. Gwendolyn Powell, an African American woman, was one of the interviewers on the panel and congratulated Ms. Messenger on receiving the job.

36. Gwendolyn Powell later changed her story and tried to rescind this admission.

37. Upon information and belief, Gwendolyn Powell was either intimidated by Ms. Alexander's campaign of terror against Ms. Messenger into changing her story or recruited to join in.

38. After being informed that she was awarded the job both verbally and by email, Ms. Scott informed Ms. Messenger that she would not be hired for the position.

39. Ms. Scott fabricated a new procedure with the specific intent of depriving Ms. Messenger of the position because Ms. Messenger was white.

40. Ms. Alexander was the instigator of a campaign of terror intended to intimidate and destroy Ms. Messenger within the VA.

41. Ms. Alexander started the campaign against Ms. Messenger because she was white.

42. Ms. Messenger and Ms. Alexander did not know each other prior to Ms. Messenger being asked to interview for the HAS Position.

43. Ms. Messenger was very distraught and upset by the aggressive, abusive, and histrionic behavior of Ms. Alexander.

44. Ms. Alexander's behavior went way beyond being inappropriate and unprofessional and could only be described as outrageous and extreme.

45. Ms. Alexander's loud, angry behavior rattled Mr. Sloan as well.

46. Ms. Alexander thereafter started a campaign of terror in concert with other employees and members of the Union in a focused and determined effort not only to ensure that Ms. Messenger did not get the promotion but to intimidate her out of the Department.

47. All the ensuring campaign of terror was started by Ms. Alexander because Ms. Messenger was white.

48. Ms. Messenger reported the abusive and terroristic attacks upon her to VA management and nothing was done to address the problem.

49. Rather than addressing the attacks with the wrongdoers, Ms. Messenger was placed in what amounts to 'solitary confinement' at the VA.

50. The 'solitary confinement' was a case of punishing the victim and made the impact upon Ms. Messenger even worse.

### BACKGROUND FACTS – CHANGING THE RULES

51. Ms. Alexander recruited Ms. Valerie Scott to her campaign of terror.

52. Ms. Scott joined the campaign of terror wholeheartedly and changed the hiring process for the position that Ms. Messenger had interviewed for.

53. The process used by Ms. Carol Stevens and approved by Mr. Laitila was unilaterally changed by Ms. Scott to deprive Ms. Messenger of the position for which she had already been hired.

54. Ms. Scott took it upon herself to modify the procedures and practices of the VECS program to suit her individual agenda of preventing Ms. Messenger from getting the position.

### BACKGROUND FACTS – HARASSMENT AND HOSTILITY

55. Ms. Messenger was subject to physical and psychological abuse because of the campaign of terror against her.

56. To reiterate the only reason this campaign of terror began was because Ms. Messenger showed up as a white woman.

57. In the months after the initial interview Ms. Messenger was accused of sleeping her way through the men in the VA in an effort get promoted.

58. Ms. Messenger's confidential medical records were illegally and wrongfully accessed without any authorization.

59. Then after violating her private medical records the information gained therefrom was used to further intimidate and harass Ms. Messenger.

60. Ms. Alexander, Ms. Lewis, Ms. Scott, and others started spreading rumors about Ms. Messenger sleeping her way through the women of the VA because she is a lesbian.

61. Ms. Messenger was physically threatened and there was an actual physical altercation between Ms. Lewis and Ms. Curry because of the threats made by Ms. Lewis towards Ms. Messenger.

62. Ms. Lewis also took to using her phone to take videos of Ms. Messenger while on the premises to intimidate her.

63. Ms. Curry was also harassed by Ms. Lewis with Ms. Lewis stating that "all this p***y you're getting around here is going to get you in trouble".

64. Ms. Lewis also stalked Ms. Messenger and Ms. Curry on social media to intimidate and besmirch their good names.

65. Ms. Lewis also followed Ms. Messenger in her car after she left the VA to intimidate and harass Ms. Messenger.

66. Despite the outrageous and inappropriate attacks upon Ms. Messenger in the form of physical and psychological intimidation and hateful gossip and rumors about her

sexuality and accusations of promiscuity, management did nothing to address the issue.

67. Despite highly illegal access of Ms. Messenger's private and confidential medical records – of which there is incontrovertible proof – nothing was done to address the harassment and intimidation.

68. Ultimately Ms. Messenger had to request a transfer to a different location to escape the intimidation, abuse, and harassment.

69. The move to a new location cost Ms. Messenger seniority and time in the promotion process.

70. Ms. Messenger has lost significant pay because of having the position wrongfully taken from her after she was already selected.

71. Ms. Messenger has endured significant psychological and emotional trauma because of the campaign of terror waged against her by Ms. Lewis, Ms. Scott, and Ms. Alexander.

## COUNT I

### DISCRIMINATION IN EMPLOYMENT ON THE BASIS OF RACE & GENDER

72. Plaintiff incorporates by reference paragraphs 1-72 as though fully restated herein.

73. At all material times, Defendant was an employer, covered by and within the meaning of Title VII of the Civil Rights act of 1964 as amended. ("Title VII")

74. Plaintiff's combination of race and gender was the sole factor that made a difference in Defendant's overturn Ms. Messengers selection for the position she interviewed for.

75. Defendant, by its agents, Ms. Scott, Ms. Lewis, Ms. Alexander, and others was predisposed to discriminate against white women and acted in accordance with that predisposition.

76. Specifically, because of the actions of Ms. Scott, Ms. Lewis, Ms. Alexander, and others there was no way that a 'pretty white girl' was going to be hired for the position.

77. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

78. If Plaintiff had been black, brown or a male she would not have been treated in the manner described.

79. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has suffered loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

COUNT II

SEXUAL HARASSMENT

80. Plaintiff incorporates by reference paragraphs 1-79 as though fully restated herein.

81. At all material times, Defendant was an employer, covered by and within the meaning of Title VII of the Civil Rights act of 1964 as amended. ("Title VII")

82. Ms. Messenger was harassed by Ms. Scott, Ms. Alexander and Ms. Lewis relentlessly following her interview for the position on April 23, 2019.

83. The sexual harassment included, but is not limited to, unwelcome comments and conduct of an offensive and sexual nature directed at Plaintiff and the creation of a hostile work environment.

84. The actions of the Defendant and its agents, representatives and employees were intentional.

85. The conduct of Defendant's agents and employees in sexually harassing Plaintiff constitutes sexual discrimination under Title VII.

86. As a direct and proximate result of Defendant's unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

## INVASION OF PRIVACY

87. Plaintiff incorporates by reference paragraphs 1-86 as through fully restated herein.

88. Ms. Messenger has a reasonable expectation of privacy in her medical records.

89. Ms. Messenger treats at the VA.

90. Ms. Messenger was able to verify that her medical records were wrongfully accessed.

91. The privacy office of the VA Health Care System confirmed that multiple employees access Ms. Messengers medical record with an official business need.  (Exhibit A)

92. Upon information and belief, the unlawful access into Ms. Messengers medical records was done as part of the campaign of terror against her initiated by Ms. Lewis, Ms. Scott and Ms. Alexander.

93. Defendant allegedly 'reeducated' those responsible.

94. Defendant did nothing to protect Ms. Messenger from those that committed the violation.

95. As a direct and proximate result of Defendant's unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, embarrassment; humiliation; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

Respectfully submitted,

/s/ *James O'Toole*

Smith O'Toole & Brooke
841 Corporate Dr., Suite 100
Lexington, KY 40503
(859) 785-4010
jotoole@SOBlawfirm.com

VERIFICATION

I, Samantha Messenger, do hereby swear and affirm that the allegations in the foregoing complaint are true and accurate to the best of my knowledge, information and belief.

_____
Samantha Messenger

COMMONWEALTH OF KENTUCKY  )
                          )
COUNTY OF FAYETTE         )

Subscribed to and sworn before by Samantha Messenger on this the 26th day of March, 2021.

_____
NOTARY PUBLIC, STATE AT LARGE

[Notary Seal: Karie O'Toole, ID No. 629155, Notary Public, State at Large, Kentucky, My Commission Expires on Aug. 13, 2023]